UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES A. MCFEELY, III,

    Plaintiff,

v.	Case No. 07-10596
    Honorable Patrick J. Duggan

THE SENECA WIRE &
MANUFACTURING CO. and
FENIX, LLC,

    Defendants.
_____/

## OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on June 5, 2008.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                    U.S. DISTRICT COURT JUDGE

Plaintiff Charles A. McFeely III ("McFeely") initiated this diversity lawsuit on February 8, 2007, claiming that Defendant Seneca Wire & Manufacturing Company ("Seneca") owes him commissions pursuant to a sales representative agreement. McFeely subsequently filed a Second Amended Complaint, adding Fenix LLC ("Fenix") as a defendant. McFeely is a citizen of Michigan; Seneca and Felix are Ohio corporations with their principal places of business in Ohio. In his complaint, McFeely asserts the following claims: (I) breach of contract against Seneca; (II) breach of contract against Fenix; (III) unjust enrichment/quantum meruit against Fenix; (IV) violation of the

"procuring cause" doctrine against both Defendants; and (V) violation of the Michigan Sales Representatives Commission Act, MICH. COMP. LAWS ANN. § 600.2961. Presently before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). The motion has been fully briefed and this Court held a motion hearing on May 29, 2008. For the reasons that follow, the Court denies the motion.

## I.     Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present

sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255, 106 S. Ct. at 2513. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Id.*, 106 S. Ct. at 2514.

## II. Factual Background

Seneca and Fenix manufacture industrial steel wire. Although Fenix initially was formed in late 2004 or early 2005 as a subsidiary of Seneca, both entities eventually became wholly-owned subsidiaries of a separate company, The Seneca Wire Group, Inc. McFeely began working as a sales representative for Seneca in approximately August 1980, and for Fenix in late 2004 or early 2005. McFeely continued to represent Defendants until March 21, 2007, when Defendants terminated his contract.

On March 26, 1992, McFeely and Seneca executed an Agency Agreement ("1992 Agreement") appointing McFeely as Seneca's sales representative for customers located in the eastern half of Michigan and a portion of Ontario, Canada.[1] (Defs.' Mot., Ex. 4.) Pursuant to the 1992 Agreement, Seneca appointed McFeely "to solicit orders for

---

[1] Earlier, in August 1980, McFeely's father executed an Agency Agreement with Seneca pursuant to which McFeely served as Seneca's sales representative to accounts located in the Detroit area. (Defs.' Mot., Ex. 2.)

[identified] products . . . ("Products")." (*Id.*)  The 1992 Agreement further required McFeely to perform the following duties:

> •aggressively market the Products within the territory;
> •assist in making collections when necessary;
> •advise Seneca on the credit responsibility and integrity of the customers; and,
> •provide information regarding customers' facilities, products, organization, etc. . . and other information which would be useful to Seneca for developing market information.

(*Id.*)  "In return for [McFeely] performing his duties," the 1992 Agreement provided that McFeely would be entitled to certain commissions. (*Id.*)  The 1992 Agreement contained the following clause regarding termination: "This Agreement can be terminated by either party effective 30 days after written notice of termination is received by the other party." (*Id.*)

The agreement continued to govern the relationship between Seneca and McFeely through McFeely's termination, with the exception that a subsequent oral agreement expanded his territory to include all of Michigan. The parties agree that McFeely did not have a separate sales representative agreement with Fenix, but served as its sales representative pursuant to the terms of the 1992 Agreement. (Defs.' Br. in Supp. of Mot. at 5; Pl.'s Resp. Br. at 2.)

On February 16, 2007, Seneca provided written notice to McFeely that it was terminating the 1992 Agreement. (Defs.' Mot., Ex. 5.)  McFeely received the termination notice on February 19, 2007. (*Id.*, Ex. 3 at 62-63, Ex. 5.)  According to the terms of the 1992 Agreement, the termination was effective March 21, 2007. (*Id.*, Exs. 4, 5.)  The

4

termination notice states that Seneca will continue paying McFeely "commissions on sales of products in [his] territory that are invoiced to the customer on or prior to the effective date of termination . . .." (*Id*., Ex. 5.)

Contending that he also is entitled to commissions on post-termination sales to customers within his territory for which he was the "procuring cause," McFeely filed the instant lawsuit.

## II. Defendants' Motion and McFeely's Response

Defendants move for summary judgment, contending that the 1992 Agreement unambiguously provides that McFeely only was entitled to commissions while he was performing his duties under the contract. In other words, Defendants argue that once the agreement was rightfully terminated, McFeely no longer was entitled to commissions earned on sales to customers within his territory. Defendants alternatively argue that the "procuring cause" doctrine on which McFeely relies for post-termination sales commissions is not applicable where a manufacturer's termination of its sales representative is not in breach of the parties' contract and the 1992 Agreement expressly permitted them to terminate McFeely. Lastly, Defendants contend that McFeely was not the procuring cause of any sales obtained after his termination. In support of this contention, Defendants provide affidavits from representatives of three customers in McFeely's territory who state that McFeely "did not play a significant role" in securing the customer's business or "was not the chief means by which [the customer's] sales were effected or procured for Seneca . . .." (Defs.' Mot., Exs. 7, 8, 9.)

5

In response, McFeely argues that the 1992 Agreement includes neither an express limitation on the commissions to be paid in the event of termination nor a limitation on Defendants' obligation to pay post-termination commissions. With respect to Defendants' second argument, McFeely maintains that a sales representative's entitlement to post-termination commissions is not dependent on whether the termination itself constituted a breach. Finally, McFeely disputes Defendants' claim that he was not the procuring cause of the sales at issue and in support of this claim he details the work he performed to secure those sales.

## III. Applicable Law and Analysis

### A. Whether the 1992 Agreement Addresses Post-Termination Commissions

Defendants maintain that the 1992 Agreement addresses the issue of McFeely's entitlement to commissions following termination. Defendants rely on the following language in the agreement:

> In return for Agent performing his duties, Agent shall be entitled to commissions described in Exhibit D.

(Defs.' Mot., Ex. 4.) According to Defendants, this language means that when McFeely no longer was performing his duties as their sales representative (i.e., once he was terminated), he no longer was entitled to commissions. Defendants cite the following cases in support of their interpretation: *Butterflied v. Metal Flow Corp.*, 185 Mich. App. 630, 462 N.W.2d 815 (1990) and *Fernandez v. Powerquest Boats, Inc.*, 798 F. Supp. 458 (W.D. Mich. 1992). The Court concludes that neither the plain language of the 1992

6

Agreement nor the cases cited by Defendants support their interpretation of the agreement.

The Court believes that to interpret the 1992 Agreement in the manner Defendants submit, the agreement would have to contain language akin to the following: "*While* the Agent is performing his duties, Agent shall be entitled to commissions . . ." or "Agent shall be entitled to commissions provided Agent remains as a manufacturer's representative for manufacturer." Instead, the 1992 Agreement provides that "in return for Agent performing his duties, Agent shall be entitled to commissions . . . " This language could be interpreted to mean that Defendants are obligated to pay McFeely commissions once he performs the duties outlined in the contract, regardless of when the sales on which the commissions are based are completed. The cases Defendants cite do not convince this Court otherwise.

In *Butterfield*, like the present case, the terms of the sales representative agreement were not contested and those terms did not expressly state whether the plaintiff/sales representative was entitled to post-termination commissions. The parties' agreement provided that the "plaintiff was to receive a 'three percent sales commission on accounts listed or developed in the future.'" *Butterfield*, 185 Mich. App. at 632, 462 N.W.2d at 816. The plaintiff maintained that he was entitled to a three percent commission on all sales on accounts developed by him, including post-termination sales. *Id*. at 634, 462 N.W.2d at 817. The defendant/manufacturer presented evidence, however, that the agreement was to govern only while the plaintiff served as the manufacturer's

7

representative. *Id*. at 637, 462 N.W.2d at 818. The Michigan Court of Appeals simply held that, because the terms of the parties' contract was contested with respect to post-termination commissions, it was for the jury to decide which theory to accept. *Id*. at 636-37, 462 N.W.2d at 818. The court concluded that there was competent evident to support the jury's finding that the manufacturer's interpretation correctly reflected the parties' agreement. *Id*. If anything, this holding supports the denial of Defendants' motion for summary judgment.

The facts on which the *Fernandez* court based its decision render the case distinguishable from the present matter. In *Fernandez*, the district court began by noting that "the procuring cause doctrine protects acquisition of orders, not acquisition of customers." 798 F. Supp. at 461-62 (citations omitted). The court therefore concluded that the plaintiff was "entitled to post-termination commissions only for sales with respect to which his efforts, in the form of customer servicing or negotiations, were the procuring cause." *Id*. at 462-63. Finding no evidence that the plaintiff was involved with the post-termination sales for which he sought commissions, and because the plaintiff's claim for recovery was based entirely on his theory that his initial recruitment of customers made him *ipso facto* the procuring cause of all subsequent sales to those dealers, the court concluded that he was not entitled to post-termination commissions. *Id*. at 463. In comparison, as discussed *infra*, McFeely presents evidence to show that his efforts were not only the procuring cause of Defendants' acquisition of customers, but also the post-termination sales for which he seeks commissions.

8

### B. Whether McFeely's Claim for Post-Termination Commissions is Precluded Because Defendants Did Not Breach the 1992 Agreement by Terminating Him

Citing *Reed v. Kurdziel*, 352 Mich. 287, 89 N.W.2d 479 (1958), and *Can-Am Engineered Products, Inc. v. International Tools Ltd.*, No. 92-1696, 1993 U.S. App. LEXIS 10196 (6th Cir. April 22, 1993) (unpublished), Defendants argue that the procuring cause doctrine is inapplicable where a manufacturer's termination of its sales representative is not in breach of the parties' agreement. Defendants rely on the following language in *Can-Am Engineered Products*, where the court relied on *Reed*:

> It is noteworthy that *Reed* dealt with the termination of a contract; the case at bar concerns only the expiration of a contract. The contract in *Reed*, moreover, was both oral and rudimentary; here the contract was in writing and quite detailed. Finally, there has been no showing that Ventra [the manufacturer] violated any contractual provision – an apparent *sine qua non* for application of the procuring cause doctrine.

1993 U.S. App. LEXIS 10196, at *13 (citing *Reed*, 89 N.W.2d at 484). When both cases are read in their entirety, however, it is clear that the courts did not base the application of the procuring cause doctrine on whether the manufacturer's termination of the sales representative constituted a breach of the sales representative agreements. Instead, the courts' analysis of whether the procuring cause doctrine applied in those cases depended upon whether the sales representative agreements provided for post-termination commissions which the manufacturers would have breached by not paying those commissions.

9

As the Michigan Supreme Court reasoned in *Reed*, the parties' contract required the manufacturer to pay commissions on all orders, including re-orders made after the sales representative's termination. 352 Mich. at 295, 89 N.W.2d at 483. The Court therefore concluded that the manufacturer's failure to pay post-termination commissions constituted a breach of the sales representative agreement. *Reed*, 352 Mich. at 297-98, 89 N.W.2d at 484; *compare Can-Am Engineered Products*, 1993 U.S. App. LEXIS 10196, at *8 (upholding the district court's rationale for rejecting the sales representative's breach of contract claim: "Because there was no provision calling for the payment of commissions after the expiration of the contract at the end of the five year period . . . Ventra had no responsibility to pay post-expiration commissions). In fact in *Reed*, where the Michigan Supreme Court held that the sale representative was entitled to post-termination commissions pursuant to the procuring cause doctrine, the Court specifically indicated that the defendant/manufacturer terminated the contract with the plaintiff/sales representative "as they had a legal right to do." 352 Mich. at 297, 89 N.W.2d at 484; *see also Roberts Assoc., Inc. v. Blazer Int'l Corp.*, 741 F. Supp. 650, 654 n.3 (E.D. Mich. 1990) (noting specifically that "[i]t is beyond doubt that defendant had the right to discharge plaintiff at will . . ." but not relying on this fact in discussing whether the procuring cause doctrine applied).

    **C.**    **Whether McFeely was the Procuring Cause of Any Post-Termination Sales**

Whether a sales representative is entitled to commissions on certain sales pursuant

to a sales representative agreement is dependent upon the terms of the agreement:

> "The relationship between agent or broker and principal being a contractual one, it is immediately apparent that whether an agent or broker employed to sell personalty on commission is entitled to commissions on sales made or consummated by his principal or by another agent depends upon the intention of the parties and the interpretation of the contract of employment, and that, as in other cases involving interpretation, all the circumstances must be considered.

*Reed*, 352 Mich. at 294, 89 N.W.2d at 482-83 (quoting AMERICAN LAW INSTITUTE, 2 Restatement, Agency, § 449, Comment a). Under Michigan law, however, where the contract is silent, the agent is entitled to recover a commission on a sale even where the sales have been consummated by the principal or some other agent if the agent shows that he was the "procuring cause" of the sale. *Id.*, 89 N.W.2d at 483. As the Michigan Supreme Court described the theory behind this doctrine:

> It would appear that underlying all the decisions is the basic principle of fair dealing, preventing a principal from unfairly taking the benefit of the agent[']s or broker's services without compensation and imposing upon the principal, regardless of the type of agency or contract, liability to the agent or broker for commissions for sales upon which the agent or broker was the procuring cause, notwithstanding the sales may have been consummated by the principal or some other agent. . . . In Michigan, the rule goes further to provide if the authority of the agent has been cancelled by the principal, the agent nevertheless be permitted to recover the commission if the agent was the procuring cause.

*Id.* (internal citations omitted).

In cases following *Reed*, however, courts have instructed that the procuring cause doctrine should be interpreted narrowly. *See Roberts*, 741 F. Supp. at 652-53 (citing

11

cases). As Judge Cohn explained in *Roberts*, ". . . it was the acquisition of orders, not the acquisition of the customer that is protected by the 'procuring cause' doctrine . . ." *Id*. at 653 (quoting *William Kehoe Assoc. v. Indiana Tube Corp.*, Nos. 88-1502, 88-2225, 1989 WL 146439, at *2 (6th Cir. Dec. 5, 1989) (unpublished)). Thus "where the agent does not participate in the negotiations of a given contract of sale with a customer, he is not the procuring cause, even though the agent may have originally introduced the customer to the principal." *Id*. (citing *Wood v. Hutchinson Coal Co.*, 176 F.2d 682 (4th Cir. 1949)). Nevertheless, an agent is entitled to a commission where his efforts were the procuring cause of a sale or where the language of the parties' sales representative agreement provides for a commission. *See, supra*.

To demonstrate that McFeely was not the procuring cause of any post-termination sales, Defendants offer the affidavit of representatives from three of the twelve customers for whom McFeely claims entitlement to post-termination commissions: Techform Products Ltd. ("Techform"), Spring Dynamics Inc., and Michigan Spring & Stamping ("Michigan Spring"). (Defs.' Mot., Exs. 7, 8, 9.) Similar to the affidavits of Spring Dynamics' and Michigan Spring's representatives, Techform's Director of Purchasing, Richard Oucharek, states that "McFeely was not the chief means by which sales were effected or procured for Seneca from Techform." (Defs.' Mot., Ex. 7 ¶ 5.) Oucharek further provides:

> Techform purchases from Seneca are based predominately on
> the products sold, their quality, and Seneca's pricing. None
> of that involved Mr. McFeely. He did not develop the

12

> products or ensure their quality. Mr. McFeely did not participate in negotiating the price for products purchased. Rather, all price negotiations occurred between Techform representatives and representatives of Seneca other than Mr. McFeely.

(*Id.* ¶ 6.) Oucharek claims that McFeely "did not play a significant role" in securing Techform's business for Seneca and that Techform would have purchased the same products from Seneca even without McFeely's involvement. (*Id.* ¶ 7.) Finally, Oucharek asserts that "all additional purchase orders [Techform] placed subsequent to the time that Mr. McFeely served as a sales representative for Seneca are the result of additional negotiations as to price. Mr. McFeely was not a part or cause of any such orders." (*Id.* ¶ 8.)

In response, McFeely provides an affidavit in which he asserts that he obtained several orders from Defendants' customers that continued to result in sales long after his termination. (Pl.'s Resp., Ex. C ¶¶ 18, 20, 22, 23.) Although acknowledging that he lacked the authority to set pricing or the other terms of sale, McFeely contends that he communicated proposals between Defendants and customers, provided information to both for use in the negotiation process, and made substantial efforts educating customers about the products sold, their quality, and Defendants' pricing. (*Id.* ¶¶ 25, 26.) Additionally, McFeely offers the deposition testimony of Seneca's Vice President of Sales and Marketing, Douglas Stearns, who testified that Defendants continued to ship products to some of its customers in 2007 or 2008 pursuant to purchase orders which were received prior to McFeely's termination. (Pl.'s Resp., Ex. E at 28-30, 61-62).

13

Based on this evidence, the Court finds a genuine issue of material fact with respect to whether McFeely was the procuring cause of some of Defendants' post-termination sales.

Moreover, the Court notes that the 1992 Agreement does not limit McFeely's right to commissions to his duty to solicit orders from customers. The sales agreement also imposes upon McFeely the duty to "aggressively market the Products within [his sales] territory" and "to provide information regarding customers' facilities, products, organization, etc. and other information which would be useful to Manufacturer for developing market information." (Defs.' Mot., Ex. 4.) Defendants are obligated to pay McFeely commissions "[i]n return for" McFeely performing his duties and does not provide that Defendants' obligation is dependent upon whether his efforts result in the solicitation of any orders.

## IV. Conclusion

For the above reasons, the Court finds that, although addressing the parties' right to terminate their sales representative relationship, the 1992 Agreement is silent with respect to McFeely's right to post-termination commissions. Pursuant to Michigan law, McFeely therefore is entitled to post-termination commissions on sales for which he was the procuring cause. This result is not changed by the fact that Defendants' termination of McFeely was in accordance with the 1992 Agreement. Finally, the Court finds a genuine issue of material fact with respect to whether McFeely was the procuring cause of any of Defendants' post-termination sales.

Accordingly,

**IT IS ORDERED**, that Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) is **DENIED**.

s/PATRICK J. DUGGAN<br>UNITED STATES DISTRICT JUDGE

Copies to:
Randall J. Gillary, Esq.
Kevin P. Albus, Esq.
Matthew D. Harper, Esq.